IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **MARLON CANADY,** | CASE NO. 7:17cv00464 |
| Plaintiff, | |
| v. | <u>OPINION AND ORDER</u> |
| **J. BOSTIC,** *et al.*, | By:  Hon. Thomas T. Cullen |
| Defendants. | United States District Judge |

Plaintiff Marlon Canady argues that the defendants should be sanctioned for spoliation of evidence because they and other prison officials did not preserve certain clips of video footage that they should have foreseen would be relevant to this litigation. On Tuesday, February 22, 2022, the court conducted a pretrial evidentiary hearing on the issue of spoliation. For reasons stated on the record and herein, the court will deny Canady's Motion for Spoliation Sanction (ECF No. 133).

Canady contends that on June 25, 2015, in the B-2 pod housing area at Keen Mountain Correctional Center ("KMCC"), another inmate attacked him and he was forced to defend himself. According to Canady, after the altercation had ended and he was on the floor with the other inmate, Defendant Bostic applied excessive force against him by using pepper spray on him two times. Canady also alleges that Defendant Barbetto used excessive force against him by engaging his canine on him after the fighting had ended. Canady also contends that, after this incident, officers moved him to the C-2 segregation housing unit where Defendant Whited, a nurse, failed to provide appropriate medical care for Canady's injuries caused by the various uses of force.  Defendants Bostic and Barbetto deny that they used excessive force

against Canady, and Defendant Whited denies that he was deliberately indifferent to any serious medical need.

Canady has asked for production of certain video footage that he wanted to show the jury. Specifically, Canady has argued that the defendants or other officials should have saved:

1. Clips of video footage from all the cameras placed in the B-2 pod where the June 25, 2015, use of force incident occurred, between 8:45 and 9:10 a.m. (prison officials have produced footage from only two cameras in B-2 pod, but Canady contends that four cameras were posted in B-2 pod at the time of this incident);

2. Any portable camcorder video footage filmed on June 25, 2015, in the C-2 segregation housing unit at KMCC, between 8:50 a.m. to 12:00 noon, while Canady was decontaminated from OC spray; and

3. Clips of surveillance camera video footage from the segregation unit on June 25, 2015, between 8:50 a.m. and 12:00 noon, and on June 26, 2015, between 4:10 a.m. and 4:45 a.m.

In response to Canady's requests, the defendants presented an affidavit from KMCC Institutional Investigator Hodges (ECF No. 100-1),[1] who states that all of the footage filmed of the inmate altercation on June 25, 2015, has been shown to Canady. This footage depicts events from two cameras on opposite ends of the pod area; the footage from these two cameras is part of the court's record. Hodges states that the Rapid Eye video system operating at KMCC in 2015 recorded over its prior footage approximately every 90 days. Thus, video footage recorded on that system from June 2015 was recorded over and lost 90 days later

---

[1] Hodges was also present in court to testify, if necessary.

2

unless it was specifically downloaded to a separate file. Hodges indicates that during the investigation of the use of force incident, an officer downloaded the video footage of that incident from the cameras in B-2 pod and saved it to a separate file.

Hodges states that no similar incident triggered retrieval of video footage from cameras in the C-2 segregation unit, and no one requested preservation of such footage. Thus, no video footage from C-2 unit on June 25 and 26, 2015, was downloaded from the Rapid Eye system to be preserved. It was lost through the normal operation of the video system approximately 90 days later.

Hodges also states that an officer used a camcorder to take still photographs of Canady's injuries, and those photographs are in the record. Hodges reports, however, that the officer did not use that camcorder device to film any video footage that day, so no such footage existed for the defendants to provide to Canady.

During the evidentiary hearing on February 2, former KMCC Investigator Craig Arms testified that he conducted the investigation into the June 25, 2015, altercation involving Canady. Arms stated that in June 2015, two Rapid Eye cameras were operating in B-2 pod. Arms testified that no use of force incident occurred in the C-2 segregation unit, and no one asked for Rapid Eye video footage from that area to be preserved, so Arms did not download or save any footage from cameras in that area.

The court questioned Investigator Arms about a diagram Canady had submitted to the court purporting to show four cameras positioned in B-2 pod. Arms testified that this document does not accurately represent the number of cameras operating in B-2 pod as of June 25, 2015. Arms stated that when he left KMCC in 2016, the pods there still had only two

cameras, but in the course of later changes to the camera system, officials installed additional cameras. Arms also testified that he did not recall viewing any video footage of Canady from June 25, 2015. Canady did not request to call witnesses to testify on the number of cameras or offer any admissible evidence to contradict Arms' testimony.

Spoliation of evidence "refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). In evaluating a spoliation claim, courts employ a two-part test. First, the party alleging spoliation must show that the adverse party reasonably should have known that certain documents or materials might be relevant to reasonably foreseeable or pending litigation. *Turner v. Walmart Stores E., LP*, No. 4:20CV00041, 2021 WL 1783256, at *6 (W.D. Va. May 5, 2021).

> A party that anticipates litigation is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request. If the court finds that such a duty existed, it must then consider whether the party breached this obligation, either by failing to preserve, or by destroying or altering, relevant materials or documents with a culpable state of mind. In the Fourth Circuit, any level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence, suffices to support a finding of spoliation.

*Id.*[2] In short, if the court determines that a party knew litigation was pending or likely such that it had a duty to preserve evidence reasonably expected to be relevant to that litigation but failed to fulfill that duty, the court must find that spoliation of evidence occurred. *Id.* Then,

---

[2] The court has omitted alterations, internal quotation marks, and/or citations here and throughout this Opinion and Order, unless otherwise noted.

4

the court must look to Rule 37(e) of the Federal Rules of Civil Procedure, governing electronically stored evidence, to determine an appropriate spoliation sanction.

The court concludes that the evidence presented does not establish any spoliation of evidence related to a foreseeable, future lawsuit about the use of force incident on June 25, 2015 involving Canady, and therefore, that no spoliation occurred.

Contrary to Canady's assertions, some of the video footage in his spoliation motion does not (and did not) exist. The uncontroverted evidence is that KMCC had only two Rapid Eye surveillance cameras positioned in B-2 Pod on June 25, 2015. The footage filmed by those two cameras is available for Canady to use at trial. According to the evidence before the court, the camcorder device was used that day to take still photographs of Canady's injuries and was not used to film any video footage of him. The photographs are available for Mr. Canady to show to the jury. Video footage that was never filmed cannot support Canady's motion claiming that the defendants should be sanctioned for spoliation.

The segments of surveillance camera footage from C-2 segregation unit that Canady wants likely did exist, but they are not now available. Because no one downloaded and saved any such footage, it was recorded over and lost through the normal operation of the Rapid Eye system 90 days after events and times at issue here. The mere fact that the video footage was lost, however, is not sufficient to support a spoliation claim. No use of force incident is alleged to have occurred on June 25 or 26, 2015, in the C-2 segregation unit. Canady did not make a written request for preservation of video footage from that area. The court cannot find from this evidence that prison officials reasonably should have foreseen footage from the C-2 unit would be relevant to a future lawsuit about the use of force incident in B-2 pod on June

25, 2015, or about any incident in C-2 unit. Therefore, officials did not have a *duty* to preserve footage from the C-2 segregation unit, and their failure preserve it cannot qualify as spoliation. *Turner*, 2021 WL 1783256, at *6.

For the reasons stated herein, and other reasons stated and explained at the hearing, it is **ORDERED** that Canady's Motion for Spoliation Sanction (ECF No. 133) is **DENIED**.

The Clerk is directed to forward a copy of this Opinion and Order to Canady and to counsel of record for the defendants.

**ENTERED** this 23rd day of February, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE